## Girard Trust Company, Trustee—Commonwealth Appeal.

Argued November 17, 1950. Before DREW, C. J., STEARNE, JONES and LADNER, JJ.

*Ralph B. Umsted,* Deputy Attorney General, with him *H. Rook Goshorn* and *T. McKeen Chidsey,* Attorney General, for appellant.

*Claude C. Smith,* with him *Harold B. Steinberg* and *Duane, Morris & Heckscher,* for appellee.

OPINION BY MR. JUSTICE LADNER, March 19, 1951:

This is an appeal by the Commonwealth of Pennsylvania from the final order of the court below dismissing the petition of the Attorney General praying for the payment of certain unclaimed moneys into the State treasury *without escheat.* The order reads as follows: ". . . it is hereby Ordered and Decreed: 'That the said Petition of the Attorney General of the Com-

monwealth of Pennsylvania praying for the payment of certain unclaimed moneys into the State Treasury, without escheat, is dismissed on the merits. (s) HARRY S. McDEVITT, J.' " No opinion was filed.

It is to be noted that Rule 43 requires the court below on receipt of notice of the appeal, to file of record at least "a brief statement, in the form of an opinion of the reasons for the ruling, order, judgment, or decree" appealed from. Explanation appears in the brief that the learned judge who signed the order died after the appeal and therefore no such opinion was written. In such circumstances counsel should have notified the surviving judges of his court, if any, or the deceased judge's successor, of the appeal and requested that Rule 43, which we regard mandatory, be complied with.

From the petition filed by the attorney general, the answer, and the record before us, we state the following material facts: The Girard Trust Company was trustee under a mortgage indenture upon premises Northeast corner 18th and Locust Streets, Philadelphia, known as the Penn Athletic Club building. It was the usual trust mortgage to secure a bond issue. In 1939, pursuant to proceedings in bankruptcy under section 77B, the United States District Court for the Eastern District of Pennsylvania approved a plan by which, inter alia, the principal amount of the mortgage and outstanding bonds, viz., $3,308,850.00 was reduced to $2,580,000.00. The plan of reorganization required the outstanding bonds to be delivered to the Girard Trust Company, the indenture trustee, for modification and registration. In 1940, pursuant to a petition filed by the debtor (Penn Athletic Club) there was entered what was called a "bar order" in connection with the reorganization plan. This "bar order" in substance provided that all holders or owners of the first mortgage

bonds issued pursuant to the original indenture must transmit or present the same to the Girard Trust Company, trustee, for registration and modification within five years of the date of the entry of the final decree closing the estate in order to participate in distribution under the plan and, otherwise, bonds not so presented to be barred. Notice was directed to be mailed to all known holders of the bonds and to be advertised. Leave was granted any holder or owner to move to vacate or modify the order by February 18, 1940, otherwise the order to become binding and final on all of them. On March 7, 1941, the U. S. District Court entered its decree closing the proceedings.

Thereafter the reorganized debtor again defaulted in its mortgage obligations and the trustee then took possession of the mortgaged property and at the same time took a deed to its nominee for the premises as additional security. The premises were leased to the United States Government and the trustee continued to collect the rents, filed two accountings thereof in the Court of Common Pleas No. 1, and pursuant to a decree of that court obtained June 2, 1948, sold the premises, filed its third account, which though entitled Third Account, is in effect a final accounting.

It appears that the owners of some $44,000 in par value of bonds failed to appear and register their bonds within the limit (March 7, 1946) fixed by the United States District Court, and proceedings were begun by Mary Eichler, who had not presented her bonds for modification in time, on behalf of herself and other bondholders similarly situated, to reopen the proceedings so that their bonds might be registered. Pursuant to these proceedings the trustees filed with the Common Pleas Court a Petition for Leave to Compromise. This petition was filed May 17, 1948, and approved June 7, 1948, five days after the sale was confirmed.

In substance the petition for compromise recited that $18,500.00 worth of bonds were held by tardy bondholders who had now appeared and in order to settle certain questions which had arisen in the proceedings, it was agreed that belated registration of their bonds would be accepted with the same force and effect as though entered before the expiration of the bar order date. Certain other provisions were included such as deduction of proportionate share of expenses of the proceedings, etc. The compromise agreement extended not only to the bondholders who were parties thereto but to others who might become parties before its final approval by the court of common pleas. In the agreement also was included a clause to the effect that the pending petition in the U. S. District Court might be dismissed without objection by any of the tardy bondholders. This resulted in a reduction of outstanding unregistered bonds to $22,500 face value.

On November 8, 1948, a third account was filed which was duly advertised and known bondholders notified. This account was confirmed by the court under a decree of distribution dated the 17th day of December, A. D. 1948, which in substance provided as follows: after ordering payment of fees, costs, and expenses, it awarded back to the trustee the sum of $780,000 to be held as a reserve "against contingencies, in particular, against possible tax liabilities, future costs, expenses and commissions, and contemplated litigation, as set forth in the Accountant's Petition for Confirmation." It also set aside the proportionate sum due on $22,500 face value of first mortgage bonds which had not yet been presented to the trustee "for modification and registration, and awarded the same back to the trustee to be held with the reserve fund for the benefit of such persons as shall ultimately be held to be entitled thereto." The balance of the trust

fund, in the hands of the accountant, together with any part of the reserve for taxes and contingencies not needed, was directed to be distributed to the bondholders in their respective proportionate shares of the balance. It is this proportionate share of $22,500 bonds which the commonwealth claims to be entitled to without escheat under its petition of June 3, 1948, claim to which the court below dismissed by order appealed from.

The argument of both learned counsel and their briefs took a confused range due largely to the failure to appreciate the nature of the commonwealth's claim. The claim here made is not one for *escheat* which would necessarily involve the question of *title* to the undistributed funds but is a claim "without escheat," for the *custody*[1] of the fund under section 1314 of the Fiscal Code of 1929, P. L. 343, 72 P.S. 1314. Were this a question of whether the *title* to the funds of the tardy and unknown bondholders has been forfeited by reason of their failure to present their bonds within the time limit fixed by the U. S. District Court, then the argument as to the interpretation of the so-called "bar order," its effectiveness, and whether the compromise of the Eichler petition and subsequent dismissal of the petition by the federal courts was res adjudicata, etc., might be pertinent. Here, however, the trustee asked the fund to be awarded back to it "to be held with the reserve fund for the benefit of such persons as shall ultimately be held to be entitled thereto," and it was so awarded.

The narrow question we have therefore is whether the Commonwealth is entitled to have *custody* of the fund pending the claim, with due proof of ownership

---

[1] See, for distinction, *Rhodes and Hannebauer Estates*, 71 D. & C. 330, 335 (1950).

by the parties entitled? The answer to this question must be found in the proper construction of Section 1314 of the Fiscal Code of 1929 (supra). This section provides, "Whenever, on the audit or adjudication of the account of any fiduciary, there shall be and remain in his possession any moneys not awarded to any claimant or claimants, or any moneys which shall have been awarded to any claimant or claimants the whereabouts whereof or that of their legal representatives the fiduciary has been unable to ascertain, the fiduciary shall, within sixty days after the date of said audit or adjudication, file, in the court having jurisdiction of his account, a sworn statement of such unawarded or unclaimed moneys, with duplicate, in the same form and manner prescribed in the preceding section of this act, and thereupon proceedings to secure the payment of such moneys into the State Treasury, through the Department of Revenue, to be refunded as hereinbefore provided, shall be had, similar in all respects to those hereinbefore provided for in cases where a statement of unclaimed moneys is filed" etc. The section then provides for a hearing on said petition, etc. It also provides that in any such case of unawarded moneys . . . "the court having jurisdiction of his accounts may, upon motion, or on its own initiative, in its discretion, order the payment of such moneys into the State Treasury, through the Department of Revenue, whether the statement" or petition was filed or not. The section further relieves the fiduciary and sureties from all liability in the circumstances, and finally provides that no fiduciary shall be discharged nor sureties released and no final distribution of funds in his possession shall be authorized or permitted so long as he has in his possession "any funds subject to payment into the State Treasury under the provisions of this section."

There remains to be said that money so paid into the State Treasury does not deprive the person lawfully entitled to it from recovering it for section 504 of the Fiscal Code, 72 P.S. 504, which supplies sec. 4 of the Act of 1919, P. L. 169, 27 P.S. 401, permits the owner of the moneys so paid in to have the same refunded with interest at 2% upon his making proof of ownership or right to possession by following the procedure therein set forth.

Turning now to the application of the law thus reviewed to the situation before us, we find that the trustee's last accounting though styled a third account, was in effect treated by the auditing judge's decree of distribution as a final account. That decree dated December 17, 1948, distributed the whole balance shown in the account. True it awarded the sum of $780,000 back to the accountants "to be held as a reserve fund against contingencies, in particular, against possible tax liabilities, future costs, expenses and commissions, and contemplated litigation, etc." but coupled this award with authority set forth in par. 7 of the decree, to the trustee to distribute among the bondholders such portion of the trust fund reserved "as it deems to be no longer required" to the bondholders entitled in the same manner as the balance remaining of the fund accounted for was directed to be distributed. In an award of this character where a reserve fund is not awarded back to a fiduciary "subject to future accounting" as in *Harbison Estate,* 365 Pa. 468, 76 A. 2d 187 (1950), a further accounting is not required since distribution of the overplus of the reserve is clearly authorized without it, though, of course, a fiduciary may if he chooses file such an account after the purpose of the reserve has been served.

But the proportion of the distribution payable on $22,500 worth of bonds held by the unregistered un-

known bondholders, and also awarded back to the trustee, was left hanging in the air. The award of that sum in full reads, "5. That such proportion of the balance of the Trust Fund as would now be distributable on account of the $22,500 face value of First Mortgage Bonds which have not yet been presented to the Trustee for modification and registration, and which are now involved in escheat proceedings, be and the same hereby is awarded back to the Accountant as Trustee, *to be held with the reserve fund for the benefit of such persons as shall ultimately be held to be entitled thereto.*" (emphasis supplied) Who these persons are, or how or when they are to be determined is not indicated; for aught that appears the trustee might hold the fund indefinitely. Neither the trustee nor any of the bondholders so far as the record shows have made claim at the audit of the account when it could have been made, for that fund to be distributed among the rest of the bondholders on the theory that the unregistered bondholders had forfeited their rights in not complying with the bar order. Perhaps the trustee or other bondholders may have commendably thought such a deprivation would not be good morals even though legally possible, in view of the acceptance of the belated presentation of the Eichler group of bondholders who were allowed their shares despite the "bar order." Be that as it may the point is the funds in question were *not* awarded and as unawarded funds the commonwealth under the express provisions of the fiscal code quoted is entitled to now hold the custody as against the trustee. Nor should this be regretted by the trustee for it will enable it to close up the affairs of this trust freed from all further responsibility. This takes nothing from any one entitled to the fund for as above stated, in the future, anyone claiming ownership and able to prove his title has his remedy by ap-

plication for refund to the Board of Finance and Revenue with right of appeal to the Dauphin County court.

The order of January 9, 1950, is reversed and the record remitted to the court below to award the sum in controversy to the Commonwealth without escheat under Sec. 1314 of the Fiscal Code of 1929 for payment into the State Treasury through the Department of Revenue. Costs of this appeal are to be paid out of the fund now directed to be paid to the Commonwealth without escheat.